UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-2928(DSD/JJG)


Cynthia F. Gordon, as Trustee
for the Heirs and Next of Kin
of Walter Valentino Gordon,
deceased,

        Plaintiff,

v.                                                    **ORDER**

Sheriff James Frank; Deputy
William Harrell; Sgt. David
Frantsi; Sgt. Garrett
Kleinendorst; Corrections
Officer Lois Arends; Corrections
Officer Vincent Deschene;
Corrections Officer John Kuenkel;
Allen Clevenger, RN; John Doe and
Jane Roe (whose true names are
unknown); and County of Washington,

        Defendants.


    Jordan S. Kushner, Esq. 431 South Seventh Street, Suite
2446, Minneapolis, MN 55415, counsel for plaintiff.

    Jon K. Iverson, Esq., Jason J. Kuboushek, Esq. and
Iverson Reuvers, LLC, 9321 Ensign Avenue South,
Bloomington, MN 55438, counsel for defendants.


    This matter is before the court upon defendants' motion for

summary judgment and plaintiff's motion to supplement the record in

opposition to summary judgment. For the following reasons,

defendants' motion is granted in part and denied in part, and

plaintiff's motion is denied.

**BACKGROUND**

Plaintiff Cynthia Gordon brought this action as trustee for the heirs and next of kin of her deceased husband, Walter Valentino Gordon ("Gordon"). On January 9, 2003, Gordon began serving a ten-day sentence in Washington County for driving after cancellation of his license. He was released five days early to go to the hospital for heart problems. The county issued an arrest warrant for Gordon to serve his remaining five days. Almost a year later, on December 29, 2003, Gordon went to the hospital for pneumonia. When he was released on January 1, 2004, he received a discharge form with a list of seven prescribed medications. Gordon also had a list of new medications for his other health problems that had been prescribed by his doctor a few weeks earlier.[1]

On January 2, 2004, Gordon's wife dropped him off at the hospital because he was in significant pain. He was told that he would have to wait to be seen. After waiting several hours, Gordon became loud and began swearing. Hospital security removed him from the waiting room. Gordon then went to a nearby restaurant and called the police department to get a ride home and get his medication. A police officer picked him up and, after performing a computer check, discovered the outstanding arrest warrant for Gordon in Washington County. As a result, the police officer

---

[1] Gordon did not have the prescriptions filled at the time because he planned to first finish his old medications. (See Cynthia Gordon Dep. at 49.)

2

arranged to transfer custody of Gordon to the Washington County Sheriff instead of taking him home.   Defendant Deputy William Harrell took custody at approximately 5:11 p.m. and was informed that Gordon had complained of pneumonia and congestive heart failure.   As Harrell transported Gordon to the Washington County jail, he heard Gordon moaning in the back seat.   Gordon told Harrell he had pneumonia and congestive heart failure.   When Harrell asked if he had trouble breathing or had chest pains, Gordon responded that he did not.   Harrell proceeded to bring Gordon to the jail.

Gordon arrived at the jail at 5:23 p.m.   He immediately informed jail staff that he was in pain and suffering from pneumonia, congestive heart failure, high blood pressure and diabetes.   After Gordon handed over his hospital discharge papers containing the list of seven medications, jail staff called defendant Allen Clevenger, the jail nurse.   Clevenger was informed that Gordon had pneumonia, congestive heart failure and diabetes and was recently discharged from the hospital.

Clevenger came to the intake area to assess Gordon.   First, he dealt with Gordon's medications and arranged for the list to be sent to a pharmacy the next morning.   Then he examined Gordon. Clevenger alleges that Gordon was completely unresponsive during the evaluation and never said a word to him.   Plaintiff Cynthia Gordon disputes Clevenger's allegation, pointing to Clevenger's

medical notes that indicate Gordon requested medication for pain and said he had been seen at the hospital for pancreatitis and pneumonia.  The notes do not indicate that Gordon was unresponsive. Plaintiff further points to the fact that Gordon was quite verbal with every other person he encountered that day.

During the evaluation, Clevenger checked Gordon's vital signs. Gordon's oxygenated blood was 97 percent, blood pressure was 200 over 90, temperature was 98 degrees Fahrenheit and pulse was 55. Clevenger placed Gordon on "high observation" for 24 hours, which meant that the officers should watch him for a possible medical problem.  Clevenger also arranged for Gordon to take the medication he brought with him to the jail.   The medical evaluation was completed at approximately 8:00 p.m.   Clevenger then called the hospital that Gordon had visited earlier in the day.  Clevenger was informed that a nurse had checked Gordon's vital signs, which were within normal ranges.  Gordon had therefore not been a priority and had to wait to be seen.

At some point before or after the evaluation, Gordon called his wife and told her he was at the jail.  (Cynthia Gordon Dep. at 65-66.)  Sometime around or after 8:00 p.m., Mrs. Gordon called the jail and spoke to defendant Sergeant Garret Kleinendorst.  She told Kleinendorst that Gordon was very ill and had to go to the hospital.  Kleinendorst responded that Gordon would be cared for. Gordon then called his wife again, and she offered to bring his

pain medication to the jail.  Gordon told her not to bother.  (<u>Id.</u> at 69.)  At around 9:00 p.m., Mrs. Gordon called the jail and again spoke with Kleinendorst.  He asked her if she had Gordon's blood pressure and pain medications.  (Cynthia Gordon Dep. at 71-72.) She had them, but did not bring them in.  Mrs. Gordon called the jail two more times that evening and left messages at the nurse's extension.

Shortly after 11:00 p.m., Gordon was brought to his cell. According to an incident report filled out by defendant Officer Lois Arends, Gordon rang the intercom in his cell shortly before midnight, wanting to see the nurse.  Gordon was told by either Arends or defendant Officer Vincent Deschene that he had already seen the nurse.[2]  He rang again, stating that he couldn't breathe and that he wanted his medications.  He was told again that he had already seen the nurse.  Gordon rang a third time, stating "please, please I need my medication."  (Kleinendorst Dep. Ex. 7.)  Arends explained that he had already received care and would be able to see medical staff the following morning.  She also threatened to lock him down if he continued to ring the intercom for "non-emergency issues."  (<u>Id.</u>)  Gordon then started yelling that he

---

[2]  Arends testified that Deschene responded to Gordon's first two intercom calls, but Deschene testified that Arends took over and dealt with all of Gordon's calls.  (<u>Compare</u> Arends Dep. at 52, <u>with</u> Deschene Dep. at 51.)  Either way, both officers participated in, or were largely aware of, the conversations that took place over the intercom with Gordon.

needed certain medications.  Arends noted that she did not believe
Gordon had trouble breathing because he was able to yell.  She also
doubted that he was in "extreme pain" because he apparently could
get in and out of bed repeatedly to ring the intercom.  (Id.)

Gordon did not contact the officers again.  Arends and
Deschene continued checking on inmates every 30 minutes.  Deschene
interacted with Gordon during two checks after the intercom
incidents.  Gordon talked to Deschene about medications and his
breathing difficulties.  During later checks, Gordon stopped trying
to talk to Deschene and instead remained lying down.  Deschene saw
that Gordon often changed sleeping positions between the checks.
At approximately 5:15 a.m., Deschene noticed that Gordon was in an
awkward position.  Upon closer inspection, he saw that Gordon was
not breathing, his eyes were open and he had blood and white foam
coming out of his mouth.  Deschene and defendant Sergeant David
Frantsi entered the cell, checked Gordon's pulse and called for
emergency medical response.  An autopsy indicated that Gordon died
from hypertensive and atherosclerotic heart disease.  There was no
evidence of pneumonia.

Plaintiff Cynthia Gordon filed this suit on June 9, 2004,
alleging that defendants deprived her deceased husband of his
rights under the Fifth, Eighth and Fourteenth Amendments.  She
alleges that defendants violated her husband's rights under color
of state law and pursuant to established policies in violation of

42 U.S.C. § 1983.    (Compl. ¶¶ 33-48.)    Plaintiff also brings

disability  discrimination  claims  under  the  Americans  with

Disabilities Act and Minnesota Human Rights Act, as well as state

law claims for negligence and medical malpractice.  (Compl. ¶¶ 49-

59.)  Defendants now move for summary judgment.[3]


## DISCUSSION

### I.   Motion to Supplement the Record

On  July  15,  2005,  the  court  heard  oral  arguments  on

defendants' motion for summary judgment and took the matter under

advisement.  One week later, plaintiff filed a motion to supplement

the record, requesting that the court consider the affidavit of an

inmate at the Washington County Jail during the relevant time

period.  When a party requests an extension of time after the

filing  deadline  has  passed,  "the  court  for  cause  shown  may  ...

permit the act to be done where the failure to act was the result

of excusable neglect."  Fed. R. Civ. P. 6(b).

Plaintiff's counsel asserts that he was unable to obtain the

affidavit  any  earlier,  despite  diligent  attempts  to  do  so.

However, defendants disclosed to plaintiff the name and contact

information of the witness on October 25, 2004.  Plaintiff had many

---

[3]  Plaintiff has not opposed defendants' motion for summary
judgment as to claims against defendants Sheriff James Frank,
Officer John Kuenkel, John Doe and Jane Roe.    Accordingly,
defendants' motion is granted as to those defendants.

months to attempt to contact the witness or to request an extension of the discovery deadline.  Plaintiff's counsel finally talked to the witness on June 7, 2005, but did not file a motion for an extension of time until July 22.  Based on these facts, plaintiff has failed to show that the delay in submitting the affidavit was the result of excusable neglect.  Even if plaintiff had difficulty contacting the witness, she had plenty of time to request an extension of the discovery deadline or the summary judgment proceedings.  Therefore, the court denies plaintiff's motion as untimely and unjustified.

## II.  Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could

cause a reasonable jury to return a verdict for either party.  <u>See</u>
<u>id.</u> at 252.

On a motion for summary judgment, all evidence and inferences
are to be viewed in a light most favorable to the non-moving party.
<u>See</u> <u>id.</u> at 255.  The non-moving party, however, may not rest upon
mere denials or allegations in the pleadings, but must set forth
specific facts sufficient to raise a genuine issue for trial.  <u>See</u>
<u>Celotex</u>, 477 U.S. at 324.  Moreover, if a plaintiff cannot support
each essential element of her claim, summary judgment must be
granted because a complete failure of proof regarding an essential
element necessarily renders all other facts immaterial.  <u>Id.</u> at
322-23.  Judgment may be rendered with respect to all or any part
of a particular claim.  <u>See</u> Fed. R. Civ. P. 56(b).

## III. Section 1983 Claims - Applicable Constitutional Right

"Section 1983 'is not itself a source of substantive rights,'
but merely provides 'a method for vindicating federal rights
elsewhere conferred.'"  <u>Albright v. Oliver</u>, 510 U.S. 266, 271
(1994) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)).
The first task for any court considering a section 1983 claim is
"to identify the specific constitutional right allegedly
infringed."  <u>Id.</u> at 271 (citing <u>Graham v. Connor</u>, 490 U.S. 386, 394
(1989)).  As to her constitutional claims, plaintiff alleges
deprivation of her deceased husband's rights (1) to life, due
process, basic medical care and equal medical treatment under the

Fifth and Fourteenth Amendments and (2) to be free from cruel and unusual punishment under the Eighth Amendment.  Defendants contend that all of plaintiff's constitutional claims should be dismissed.  Plaintiff has opposed defendants' contention only on the basis of her Eighth Amendment claim.[4]  Because plaintiff has abandoned her Fifth and Fourteenth Amendment claims, the court grants summary judgment in favor of defendants on those claims.  Therefore, the specific constitutional right allegedly infringed is Gordon's Eighth Amendment right to be free from cruel and unusual punishment.

## IV.   Qualified Immunity

Defendants move for summary judgment on grounds of qualified immunity.  Qualified immunity provides protection from civil liability to government agents performing discretionary functions, so long as the challenged actions are objectively reasonable in light of clearly established legal principles.  See Anderson v. Creighton, 483 U.S. 635, 638 (1987).  Qualified immunity is generally a question of law for the court and because its purpose

---

[4]  Plaintiff specifically noted that defendants did not move for summary judgment on her disability discrimination claims, but made no mention of her Fifth and Fourteenth Amendment claims.  (See Pl.'s Mem. Opp'n Summ. J. at 1 n.1.)  Therefore, she evidently agreed that all of those constitutional claims were subject to summary judgment.

is to shield the official from suit entirely, it should be decided as early in the litigation as possible.  See Gainor v. Rogers, 973 F.2d 1379, 1382-83 (8th Cir. 1992).

Plaintiff claims that defendants violated her husband's right to be free from "cruel and unusual punishment" as guaranteed by the Eighth Amendment of the Constitution of the United States of America.   The  Eighth  Amendment  proscribes  the  deliberate indifference of prison officials to a prisoner's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  However, mere negligence in "diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."   Id. at 106.   To establish a claim of deliberate indifference,  a  plaintiff  must  show  "(1)  that  [the  prisoner] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs."  Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

### A.    Objectively Serious Medical Need

Plaintiff argues that her husband's heart ailments, which led to  his  death  while  in  police  confinement,  constituted  an objectively serious medical need for Eighth Amendment purposes.  A medical need is serious if it has been diagnosed by a physician as requiring treatment or if the need is so obvious that a lay person would  easily  recognize  it  as  requiring  treatment.   Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (citing Johnson v.

11

Busby, 953 F.2d 349, 351 (8th Cir. 1991) (per curiam)).  Here,
Gordon had been diagnosed with congestive heart failure, among
other ailments, for which he was prescribed numerous medications.
Therefore, he had an objectively serious medical need.  See id. at
176 (shoulder injury treated by doctor prior to incarceration was
"serious medical need").

### B.   Deliberate Indifference

Plaintiff contends that defendants knew of her husband's need
for medical attention, but deliberately disregarded that need.  To
be deliberately indifferent, prison officials must both be aware of
facts that support the inference that a substantial risk of serious
harm exists, and they must also draw the inference.  Farmer v.
Brennan, 511 U.S. 825, 837 (1994).  If a substantial risk of harm
was obvious, then a factfinder could conclude that a prison
official knew of the risk.  Id. at 842.  Treatment by a prison
medical official that is grossly incompetent or "so inappropriate
as to evidence intentional maltreatment" can rise to the level of
deliberate indifference.  Smith v. Jenkins, 919 F.2d 90, 93 (8th
Cir. 1990).

### 1.   Deputy William Harrell

Plaintiff argues that defendant Deputy Harrell was
deliberately indifferent to Gordon's serious medical needs because
he failed to attempt to obtain medical care for Gordon or ask
Gordon whether he needed medical attention.  The court disagrees.

After Gordon told Harrell that he had congestive heart failure and pneumonia, Harrell asked him whether he was having chest pains or trouble breathing.  Gordon answered in the negative and did not request medical care.  Based on this evidence, Harrell did not know of any substantial risk of serious harm to Gordon at that time. Therefore, summary judgment in favor of defendants on the section 1983 claims against defendant Harrell is warranted.

### 2.   Sergeant Garrett Kleinendorst

Plaintiff asserts that defendant Sergeant Kleinendorst violated Gordon's constitutional rights by failing to obtain medication for Gordon or to determine if he needed more medical treatment.  In response, defendants point out that Kleinendorst had no personal contact with Gordon and that his actions were at most negligent.  The court agrees with defendants.  At the time of Kleinendorst's involvement, Gordon was being examined by Nurse Clevenger.  Kleinendorst properly relied upon that examination and discussed Gordon's medications with Mrs. Gordon on the telephone. Plaintiff has failed to present evidence that Kleinendorst was aware of facts that suggested a substantial risk of serious harm to Gordon existed.  Therefore, summary judgment in favor of defendants on the section 1983 claims against Kleinendorst is appropriate.

### 3.   Nurse Allen Clevenger

Plaintiff argues that defendant Nurse Clevenger was deliberately indifferent to Gordon's serious medical needs because

13

he did not immediately attempt to obtain Gordon's prescription medications.   In response, defendants point to the facts that Gordon's vital signs did not indicate a serious medical condition and that Clevenger contacted the hospital to inquire about Gordon's earlier visit.   In light of those facts, the court agrees with defendants that plaintiff has failed to show that Clevenger deliberately disregarded any serious medical need.   However unwise or unconventional Clevenger's decision may have been to obtain Gordon's medications the following day, the decision was based upon actual medical observations and confirmed by contacting the hospital.

Plaintiff also argues that Clevenger failed to respond to Gordon's alleged complaints during the medical evaluation. However, even if Gordon had repeated his complaints to Clevenger, Clevenger's treatment of Gordon does not rise to a level of deliberate indifference.   In particular, plaintiff has failed to present any evidence that Clevenger's treatment of Gordon was "grossly incompetent" or constituted intentional maltreatment.   See Smith, 919 F.2d at 93.   For all of the above reasons, summary judgment on plaintiff's section 1983 claims against Clevenger is granted.

### 4.   Officer Lois Arends

Plaintiff contends that defendant Officer Arends violated Gordon's constitutional rights by deliberately denying him medical

care for his serious medical condition.    Plaintiff points to
undisputed evidence that Gordon repeatedly rang the intercom in his
cell to request medical attention and medication, as well as to
complain of pain and breathing difficulties.    In her incident
report, Arends quoted Gordon as saying, "please, please I need my
medication."    (Id.)    Officer Deschene, who participated in or
overheard some of the conversation between Gordon and Arends, also
testified that it was obvious Gordon was agitated.   (Deschene Dep.
at 60.)    At that time, Gordon was on "high observation," as
directed by Nurse Clevenger.[5]   In light of the above evidence, a
reasonable jury could find that Arends was aware of facts that
supported the inference that a substantial risk of serious harm to
Gordon existed.   Moreover, the risk of harm was obvious in light of
Gordon's known medical history, his "high observation" status, his
repeated requests for medical attention and his specific complaints
of pain and breathing difficulties.   It is difficult to imagine how
Gordon could have said or done anything more to communicate his
serious medical needs.

    Despite the obvious risk to Gordon, the evidence suggests that
Arends was deliberately indifferent to his medical needs.   Arends

---

    [5]  It is unclear whether the officers knew Gordon was placed
on "high observation" or whether they were told he was on "sleep
activity watch."   (See Eichten Dep. at 25-27; Clevenger Dep. at 123
& Ex. 6; Kleinendorst Dep. at 94.)    Despite the designation,
however, the officers were on notice that Gordon might have medical
problems.

continued to deny Gordon's requests for medical attention and even threatened to lock him down "if he continued to ring the intercom for non-emergency issues." (Kleinendorst Dep. Ex. 7.) Further, plaintiff has pointed to evidence that Arends may have been disregarding Gordon's needs based upon her belief that Gordon made false complaints to go to the hospital a year earlier. (See Deschene Dep. at 53-56.) If true, then such evidence further shows that her disregard of Gordon's medical condition was deliberate.

Defendants argue that Arends was not deliberately indifferent because she decided that Gordon did not in fact have difficulty breathing due to his ability to yell loudly. However, according to her incident report, Gordon complained of an inability to breathe the first time he rang the intercom, but did not begin yelling until he rang the third time. Furthermore, Arends' unqualified medical assessment of Gordon over the intercom does not change the fact that his serious medical need was obvious. Defendants also point to Arends' observation that Gordon eventually stopped yelling and calmed down. However, in light of her threat to lock him down for ringing the intercom, Gordon's changed behavior is hardly surprising. For all of these reasons, plaintiff has raised an issue of fact concerning Arends' deliberate indifference to Gordon's medical needs. Summary judgment on plaintiff's Eighth Amendment claims against Arends is not warranted.

### 5.   Officer Vincent Deschene

Plaintiff asserts that defendant Officer Deschene was also deliberately indifferent to Gordon's medical needs because he decided not to act on his suspicion that Gordon required medical attention.  In response, defendants point out that Deschene could not hear all of the conversations between Arends and Gordon over the intercom.   Deschene also testified that he did not affirmatively act upon his suspicions concerning Gordon's condition because he did not have access to Gordon's record or to all the facts that Arends had.  (<u>See</u> Deschene Dep. at 60-61.)  However, based upon what Deschene heard of Arends' conversations with Gordon, he did conclude that Gordon might need medical care.  (<u>Id.</u> at 60.)  Moreover, Gordon talked to Deschene twice about medication and difficulties breathing after the intercom incidents.  Despite the facts available to Deschene, his suspicions about Gordon's medical need and the obvious risk of harm to Gordon, Deschene failed to act or respond in any way.  Based on this evidence, a reasonable jury could find that (1) Deschene had the facts necessary to know a substantial risk of serious harm existed and (2) he actually drew the inference of a substantial risk. Therefore, summary judgment as to the Eighth Amendment claims against Deschene is inappropriate.

### 6.   Sergeant David Frantsi

Plaintiff argues that defendant Sergeant Frantsi deliberately disregarded the medical needs of Gordon by failing to respond to Arends' report of the intercom conversations she had with Gordon. A supervisor may be individually liable under section 1983 if he failed to properly supervise the offending employee and was deliberately indifferent to or tacitly authorized the offending acts. <u>Wever v. Lincoln County, Neb.</u>, 388 F.3d 601, 606 (8th Cir. 2004). Frantsi testified that Arends told him about Gordon's requests for medical care and medication and that he said he couldn't breathe. (<u>See</u> Frantsi Dep. at 54, 69-70.) Like Officer Arends, Frantsi knew that Gordon had been sent to the hospital from the jail a year earlier. (<u>Id.</u> at 69.) Based on this evidence, Frantsi had the facts necessary to conclude that a substantial risk of serious harm to Gordon existed. As with Officers Arends and Deschene, a reasonable jury could find that Frantsi actually made the inference that a substantial risk existed because the risk was obvious. However, Frantsi simply made note of Gordon's complaints and decided not to respond unless or until an officer asked him to. (<u>Id.</u> at 57-58.) A jury could find that Frantsi's behavior showed deliberate indifference and a tacit authorization of the officers' failure to respond to Gordon's medical need. For all the above reasons, summary judgment as to the Eighth Amendment claims against Frantsi is unwarranted.

18

### C.    Clearly Established Right

Plaintiff has presented sufficient evidence to survive summary judgment on her Eighth Amendment claims against Officers Arends and Deschene and Sergeant Frantsi.   However, qualified immunity will still shield these defendants from suit if their actions were "objectively reasonable in light of clearly established law and the facts known" by them at the time of the alleged violation.   Lyles v. City of Barling, 181 F.3d 914, 917 (8th Cir. 1999).   At the time of Gordon's incarceration, "'the law was clearly established that a prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment.'"   Pool v. Sebastian County, Ark., 418 F.3d 934, 942 (8th Cir. 2005) (citing Meloy v. Bachmeier, 302 F.3d 845, 848 (8th Cir. 2002)).   In light of the clearly established law and the facts known by defendants Arends, Deschene and Frantsi, they are not entitled to qualified immunity as to plaintiff's Eighth Amendment claims.

## IV.  Municipal Liability

Defendant County of Washington (the "County") seeks summary judgment with respect to its liability under section 1983.   A local government unit may be held liable in a section 1983 action only when an unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the county's] officers."   Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978).   The policy must

19

be the "moving force [behind] the constitutional violation." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (quoting Monell, 436 U.S. at 694).

Plaintiff argues that the County's policy of not obtaining prescription medications after 5:00 or 6:00 p.m., except when an inmate is sent to the emergency room, violated her husband's constitutional rights. Plaintiff has cited no authority in support of her argument. Plaintiff also fails to explain why the County's policy is unconstitutional in light of the fact that an inmate can obtain prescription medication when sent to the emergency room. Finally, plaintiff has not shown how the County's policy was the moving force behind the alleged constitutional violations of Arends, Deschene and Frantsi in failing to respond to Gordon's medical complaints. For all of these reasons, summary judgment in favor of defendants on plaintiff's Monell claim is appropriate.

## V. Disability Discrimination

Defendants assert that they move for summary judgment on all of plaintiff's claims, but they have failed to present any argument as to plaintiff's federal and state disability discrimination claims. Plaintiff explained in her responsive brief that she would not address the discrimination claims because defendants did not request summary judgment on those claims. (Pl.'s Mem. Opp'n at 1 n. 1.) Defendants then clarified in their reply brief that they do move for summary judgment as to the discrimination claims (see

Defs.' Reply Mem. at 1-2 & n.1.), but again failed to present any legal or factual argument. Having heard no argument from either party, the court hesitates to speculate as to what facts in the expansive record may or may not support those claims. Furthermore, plaintiff has indicated that she does not waive the claims. Therefore, summary judgment as to plaintiff's disability discrimination claims is denied.

## VI.  State Claims Against Individual Defendants

### A.  Official Immunity

The individual defendants allege that they are entitled to official immunity for plaintiff's state law claims. The official immunity doctrine sets forth that "a public official charged by law with duties calling for the exercise of discretion is not personally liable to an individual for damages." Kelly v. City of Minneapolis, 598 N.W.2d 657, 664 (Minn. 1999). A defendant does not enjoy official immunity when (1) the duty performed was ministerial rather than discretionary or (2) the official acts with malice. Id. at 664. A duty is ministerial if it is "'absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts.'" Anderson v. Anoka Hennepin Indep. Sch. Dist. 11, 678 N.W.2d 651, 656 (Minn. 2004) (quoting Wiederholt v. City of Minneapolis, 581 N.W.2d 312,

315 (Minn. 1998)).   For immunity purposes, "malice" means "the
willful violation of a known right."  Id. at 663 (quoting Rico v.
State, 472 N.W.2d 100, 107 (Minn. 1991)).

     Plaintiff  argues  that  the  individual  defendants  are  not
entitled  to  official  immunity  because  their  acts  were  both
ministerial and malicious.   First, plaintiff points to the jail
policies  to  support  her  argument  that  defendants  failed  to
implement their ministerial duties.   Jail procedures require an
officer to "immediately notify the Correctional Sergeant" when the
officer "becomes  aware  of  an  ill  or  injured  inmate."   (Deschene
Dep. Ex. 2 at 2.)  The Sergeant must then "assess the situation for
the  appropriate  medical  response."   (Id.)   The  jail  procedures
required  specific  action  on  the  part  of  Arends,  Deschene  and
Frantsi once they became aware of Gordon's medical need.   As a
result, their duty to respond was ministerial.   Therefore, those
defendants  are  not  entitled  to  official  immunity  with  respect  to
plaintiff's state law claims.

     Defendants argue that the acts of Arends, Deschene and Frantsi
were  discretionary  because  the  jail  policies  and  procedures  are
meant  only  to  guide  officials.   The  Washington  County  Sheriff
authorized  the  jail  to  establish  "operational  policies  and
procedures which shall guide and direct staff in the performance of
their duties."  (Kuboushek Aff. Ex. A.)  Contrary to defendants'
argument,  the  language  "shall  guide  and  direct  staff"  indicates

22

that officials do not have the discretion to decide whether or not
to follow the policies.   Furthermore, the policy concerning ill
inmates states that officers "will" notify a sergeant, who in turn
"will" assess the situation.   (Deschene Dep. Ex. 2 at 2.)   Such
language indicates that the procedure for responding to an ill
inmate is ministerial, not discretionary.   For all of these
reasons, defendants' argument fails.[6]

Plaintiff argues that Clevenger also failed to follow jail
policies when addressing Gordon's medical needs.  However, she has
failed to identify the particular policies that Clevenger allegedly
failed to follow.  (See Pl.'s Mem. Opp'n at 44.)  Plaintiff further
asserts that the individual defendants acted with malice towards
Gordon.   She refers to her deliberate indifference argument to
support her malice argument.  The court has already determined that
plaintiff failed to show that defendants Clevenger, Kleinendorst
and Harrell acted with deliberate indifference towards Gordon's
medical needs.  Accordingly, plaintiff has provided no basis for
finding that those defendants acted with malice.   Therefore,
summary judgment in favor of defendants on plaintiff's state law
claims against Clevenger, Kleinendorst and Harrell is warranted.

---

[6] Defendants cite Ireland v. Crow's Nest Yachts, Inc., 552
N.W.2d 269 (Minn. Ct. App. 1996), in support of their argument.  In
Ireland, however, the policy manual at issue explicitly deferred to
the professional judgment of the relevant employees.  By contrast,
the policies of Washington County Jail do not defer to officials'
discretion whether to respond to an ill inmate.  Therefore, Ireland
is inapplicable.

## B.   Vicarious Official Immunity

Defendants assert that the County is entitled to vicarious official immunity for claims based on the acts of individual defendants who are entitled to official immunity.  Plaintiff has not argued to the contrary.  Therefore, the court grants summary judgment in favor of the County as to state law claims arising from acts by Clevenger, Kleinendorst and Harrell.  See Anderson, 678 N.W.2d at 663-64.

## C.   Negligence

Plaintiff's negligence claims against defendants Arends, Deschene and Frantsi are the only remaining state law claims against defendants.[7]  The court finds that disputed issues of material fact preclude summary judgment on those claims.

## VII. Statutory Immunity

Defendants argue that the County is statutorily immune from vicarious liability for the remaining state law claims against the individual defendants.  Defendants cite Minnesota Statutes section 466.03, subdivision 11, which provides immunity to a municipality for "[a]ny claim for a loss based on the usual care and treatment,

---

[7]  The court notes that plaintiff also argues that the County is liable for negligent hiring and supervision. (See Pl.'s Mem. Opp'n at 48.)  However, plaintiff did not bring claims for negligent hiring and supervision, but rather only asserted vicarious liability against the County for the actions of the individual defendants. (See Compl. ¶¶ 60-62.)  Therefore, the court will not address plaintiff's negligent hiring and supervision argument.

24

or lack of care and treatment, of any person at a municipal hospital or corrections facility where reasonable use of available funds has been made to provide care." To show that it made reasonable use of funds, the County provides evidence of its total budgeted and actual medical expenditures in 2004. However, whether the County made a reasonable use of funds to provide care to Gordon is uncertain. <u>See</u> <u>Thornton v. United States Dep't of Justice</u>, 93 F. Supp. 2d 1057, 1070-71 (D. Minn. 2000) (immunity provision applies only when government entity shows that it made reasonable use of funds in providing inmate with care). Further, it is unclear what funds were available when Gordon was incarcerated. For these reasons, genuine issues of material fact preclude summary judgment on the County's liability for remaining state law claims.[8]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. Accordingly, **IT IS HEREBY ORDERED** that:

---

[8]   Defendants also argue that the County is entitled to statutory immunity pursuant to subdivision 6 of Minnesota Statutes section 466.03. However, their argument is directed to plaintiff's <u>Monell</u> claim, to which statutory immunity does not apply. (<u>See</u> Defs.' Mem. Supp. at 30.) Moreover, the court has already determined that defendants are entitled to summary judgment on plaintiff's <u>Monell</u> claim. Therefore, the court will not address defendants' second statutory immunity argument.

1.   Defendants' motion for summary judgment [Doc. No. 12] is granted as to Counts II, III, IV and VII, granted in part as to Counts I, VI and VIII and denied as to Count V.

2.   Plaintiff's motion to supplement the record [Doc. No. 38] is denied.

Dated: September 30, 2005


                                    s/David S. Doty
                                    David S. Doty, Judge
                                    United States District Court